UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RETSEL CORPORATION, d/b/a Grand Gateway Hotel and d/b/a Cheers Sports Lounge and Casino; CONNIE UHRE; and NICHOLAS UHRE,<br><br>Plaintiffs,<br><br>v.<br><br>EXPEDIA, INC. d/b/a Expedia.com,<br><br>Defendant. | C25-1033 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant Expedia, Inc.'s Motion to Dismiss, docket no. 31. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Plaintiffs Retsel Corporation, Connie Uhre, and Nicholas Uhre (collectively, "Plaintiffs") operate the Grand Gateway Hotel and Cheers Sports Lounge and Casino (the "Hotel and Lounge"). 2d Am. Compl. at ¶ 6–7 (docket no. 28). The Hotel and Lounge are long-standing establishments that serve tourists and the local community in Rapid City, South Dakota. Id. at ¶ 9. Plaintiffs entered into a contract with Expedia, under which Expedia agreed to list and promote Grand Gateway Hotel on its platform in exchange for commissions. Id. at ¶ 10. The parties' contract contains the following

ORDER - 1

provision: "Expedia may, at any time and in its sole discretion, refuse to offer, display, or list for booking any of Your rooms made available by You through the Expedia System." Expedia Traveler Preference ("ETP") Contract, Ex. A to Vasquez Affidavit (docket no. 14-1 at 11). Prior to 2022, Expedia listings accounted for the majority of Plaintiffs' bookings and revenue. 2d Am. Compl. at ¶ 11 (docket no. 28).

Starting in 2020, members and affiliates of "activist group NDN Collective" launched a campaign to portray Plaintiffs and their business as racist through the use of false social media posts. Id. at ¶ 13. These posts went viral, which resulted in harassment, threatening phone calls, reputational harm, and coordinated pressure on Plaintiffs' business partners. Id. at ¶ 14. Between late 2020 and April 2021, individuals associated with NDN Collective repeatedly booked rooms at Grand Gateway Hotel and caused disturbances and property damages, apparently to provoke confrontations. Id. at ¶ 15. On March 19, 2022, a fatal shooting occurred inside Grand Gateway Hotel; Plaintiffs were not involved. Id. at ¶ 16.

On March 20, 2022, Connie Uhre made a personal Facebook post "that activists seized upon." Id. at ¶ 17. On March 21, 2022, Plaintiffs issued a public apology. Id. at ¶ 19. Activists continued and escalated their campaign by staging and filming confrontations at Grand Gateway Hotel, trespassing, damaging property, hanging defamatory banners over Plaintiffs' signage, disseminating "propaganda on social media," and encouraging "boycotts and cancellation of group reservations." Id. at ¶ 19–20. NDN Collective members also called Defendant Expedia and other third-party booking platforms to demand delisting of Grand Gateway Hotel. Id. at ¶ 20. This

ORDER - 2

1 coordinated campaign was designed to "tarnish Plaintiffs' reputation, destroy their
2 business, and pressure online platforms like Expedia to take punitive action without fair
3 investigation." Id. at ¶ 21.
4     Plaintiffs allege that, on March 26, 2022, Expedia deactivated Grand Gateway
5 Hotel's listing "without prior notice, without meaningful investigation, and without any
6 opportunity to respond." Id. at ¶ 22. Plaintiffs also allege that Expedia later claimed it
7 acted based on a "news link" and "no response," but "in fact never gave Plaintiffs a fair
8 chance to be heard." Id. Plaintiff temporarily closed Grand Gateway Hotel during the
9 height of the activist campaign to allow tensions to cool. Id. at ¶ 23. After the Hotel
10 reopened, Expedia later reinstated the listing, "acknowledging Plaintiffs' explanation and
11 concluding its internal review." Id.
12     In November 2023, Plaintiffs signed a consent decree with government authorities
13 and were sued by third parties; thereafter Expedia again delisted Grand Gateway Hotel.
14 Id. at ¶ 24.
15     On February 28, 2024, Expedia informed Plaintiffs that, after a thorough
16 investigative review of the incidents and allegations provided, it found Plaintiffs'
17 responses to Expedia's inquiries satisfactory. Ex. A to 2d Am. Compl. (docket no. 28 at
18 11). Expedia asked Plaintiffs to allow for 24-48 hours for the Hotel to be reinstated on
19 Expedia's live websites. Id. On March 6, 2024, Plaintiffs followed up with Expedia
20 because the Hotel had still not been reinstated. Id. (docket no. 28 at 16). An Expedia
21 employee responded the same day and allegedly stated that "I am working with our
22 leadership to determine the next course of action as we have run into some difficulties re-
23

ORDER - 3

instating the property" and that they will follow up once they had a better understanding on the matter. Id. Expedia failed to follow through with these representations and ceased communication entirely. 2d Am. Compl. at ¶ 24 (docket no. 28). In the spring of 2025, Plaintiffs' revenue manager once again contacted Expedia seeking reinstatement and allegedly, despite assurances that Grand Gateway Hotel would be restored within 48 hours, Plaintiffs' property was left inactive without explanation. Id. at ¶ 25.

In their operative pleading, the Second Amended Complaint, docket no. 28, Plaintiffs' assert two claims: (1) breach of contract and implied covenant of good faith and fair dealing[1], and (2) violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86. See id. at ¶¶ 32–44. Plaintiffs contend that Expedia's removal of Grand Gateway Hotel from its websites caused an immediate and sustained collapse in Plaintiffs' business, with an "80% drop in bookings beginning in March 2022." Id. at ¶ 27. Plaintiffs also contend that lost revenue exceeded $250,000 in 2023 alone and the financial impact has continued through 2025 due to Expedia's repeated failures to reinstate the property on its websites. Id. Plaintiffs state that they lost lucrative partnerships and long-term group bookings, including cancellations by sports teams, tour operators, and conferences who relied on Expedia's platform for reservations. Id. at ¶ 28. Plaintiffs allege that Expedia's actions "inflicted severe reputational harm and loss of

---

[1] The parties interpret Count I as containing one claim: for breach of the implied covenant of good faith and fair dealing. Mot. at 5 (docket no. 31); Resp. at 3–7 (docket no. 32). The Court follows the parties' lead and analyzes that claim only. See Haywood v. Amazon.com, Inc., 2023 WL 4585362, at *2 (W.D. Wash. July 18, 2023).

ORDER - 4

1  goodwill, as Plaintiffs were portrayed in media and activist campaigns as 'delisted' or
2  'blacklisted' by a dominant travel platform, further discouraging future business." Id. at
3  ¶ 29.
4       Expedia moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss
5  Plaintiffs' Second Amended Complaint.  See Mot. (docket no. 31).
6  **Discussion**
7  A.    **Legal Standard**
8       Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not
9  provide detailed factual allegations, it must offer "more than labels and conclusions" and
10 contain more than a "formulaic recitation of the elements of a cause of action."  Bell Atl.
11 Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than
12 mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a
13 claim, such deficiency should be "exposed at the point of minimum expenditure of time
14 and money by the parties and the court."  Id. at 558.  A complaint may be lacking for one
15 of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts to state a
16 cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th
17 Cir. 1984).  On a Rule 12(b)(6) motion, the question for the Court is whether the facts in
18 the operative pleading sufficiently state a "plausible" ground for relief.  Twombly, 550
19 U.S. at 570.  If the Court dismisses the complaint in part or in toto, it must consider
20 whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).
21
22
23

B.     **Count I – Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege that Expedia breached the implied covenant of good faith and fair dealing by acting arbitrarily and in bad faith. 2d Am. Compl. at ¶ 36 (docket no. 28). Plaintiffs contend that Expedia's "repeated delisting of the Hotel and Casino without investigation, reliance on unverified activist allegations, and failure to honor reinstatement commitments" was "willful and in bad faith." Id. at ¶ 38. Expedia argues that two contract provisions require dismissal of this claim: (1) the provision that provides Expedia the "sole discretion" to refuse to offer, display, or list for booking any of Grand Gateway Hotel's rooms made available through the "Expedia System"; and (2) the limitation of liability clause that bars recovery of lost profits. Mot. at 2, 6–7 (docket no. 31). Plaintiffs state that the "sole direction" provision is unenforceable and that the limitation of liability provision is unenforceable because Expedia acted willfully, in bad faith, or with gross negligence. 2d Am. Compl. at ¶ 37 (docket no. 28); Resp. at 5–7 (docket no. 32).

Plaintiffs argue that the "sole discretion" provision in the parties' contract is unenforceable because it is substantively and procedurally unconscionable.[2] "Whether an agreement is unconscionable is a question of law for the courts." Satomi Owners Ass'n

---

[2] Plaintiffs appear to anchor this argument on their assertion that the contact was one of adhesion. The determination of whether a contract is an adhesion contract, however, goes to whether it is procedurally, not substantively, unconscionable. Adler v. Fred Lind Manor, 153 Wn.2d 331, 348 n.7 103 P.3d 773 (2004). Expedia does not appear to deny that the contract was one of adhesion, and instead focuses on whether the "sole discretion" provision was unconscionable. The Court will do the same without deciding whether the parties entered into an adhesion contract.

ORDER - 6

v. Satomi, LLC, 167 Wn.2d 781, 814, 225 P.3d 213 (2009) (quoting McKee v. AT & T Corp., 164 Wn.2d 372, 396, 191 P.3d 845 (2008)).  Washington[3] courts recognize two categories of unconscionability, substantive and procedural.  Adler v. Fred Lind Manor, 153 Wn.2d 331, 344, 103 P.3d 773 (2004).  Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, or, as alternatively described, shocking to the conscience, monstrously harsh, or exceedingly calloused.  Id. at 344–45.  "Procedural unconscionability is the lack of a meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print."  Id. at 345 (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)) (internal quotation marks omitted).  These three factors should not be applied mechanically without regard to whether in truth a meaningful choice existed.  Id.  A contract is "procedurally unconscionable" when a party with unequal bargaining power lacks a meaningful opportunity to bargain, thus making the end result an adhesion contract.  Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 54, 470 P.3d 486 (2020).  "An adhesion contract is not necessarily procedurally

---

[3] The authorities Plaintiffs cite in support of their arguments concerning unconscionability are all from California.  See Resp. at 5–7 (docket no. 32).  The parties' contract is, however, undisputedly "governed by and shall be construed in accordance with Washington law."  ETP Contract, Ex. A to Vasquez Affidavit (docket no. 14-1 at 13).

ORDER - 7

unconscionable," and the "key inquiry" is whether the party lacked meaningful choice. Id. at 54–55.

Plaintiffs contend that the "sole discretion" provision is substantively unconscionable because it "produces a grossly one-sided advantage favoring one party." Resp. at 6 (docket no. 32). To interpret the meaning of a contract's terms, Washington courts employ the context rule. Adler, 153 Wn.2d at 351. The context rule requires that the Court determine the intent of the parties "by viewing the contract as a whole, which includes the subject matter and intent of the contract, examination of the circumstances surrounding its formation, subsequent acts and conduct of the parties, the reasonableness of the respective interpretations advanced by the parties, and statements made by the parties during preliminary negotiations, trade usage, and/or course of dealing." Id. The "sole discretion" provision effectively amounts to a contract termination clause. Another such contractual term exists in the parties' contract: "The Contract will remain in effect, unless terminated by either You or Expedia by giving at least fourteen (14) days prior written notice to the other or is terminated as otherwise provided in the Contract." ETP Contract, Ex. A to Vasquez Affidavit (docket no. 14-1 at 1). The "sole discretion" provision is not one-sided and therefore not substantively unconscionable because both parties have a right to unilaterally terminate the contract for any or no reason.

Plaintiffs also contend that the "sole discretion" provision is procedurally unconscionable because of the unequal bargaining power between the two parties. See Resp. at 6–7 (docket no. 32). Washington courts, however, "have long held that the fact that unequal bargaining power exists will not, standing alone, justify a finding of

ORDER - 8

1 | procedural unconscionability." <u>Zuver v. Airtouch Commc'ns, Inc.</u>, 153 Wn.2d 293, 305,
2 | 103 P.3d 753 (2004) (collecting cases).  Plaintiffs, through their operative pleading, do
3 | not allege any facts that would at this stage support a conclusion that Plaintiffs lacked
4 | meaningful choice when entering into their contract with Expedia.  Also absent from the
5 | operative pleading are supporting factual allegations concerning whether each party had a
6 | reasonable opportunity to understand the terms of the contract.  Plaintiffs cannot
7 | reasonably assert that the "sole discretion" provision was hidden in a maze of fine print.
8 | The Court concludes that the "sole discretion" provision is therefore not procedurally
9 | unconscionable based on the facts alleged in the Second Amended Complaint.  Plaintiffs'
10 | contention that the "sole discretion" provision is either substantively or procedurally
11 | unconscionable lacks merit.

12 |       Plaintiffs next argue that Expedia breached its duty of good faith and fair dealing
13 | by failing to conduct a proper investigation.  Resp. at 7 (docket no. 32).  This argument
14 | also lacks merit.

15 |       Under Washington law, the duty of good faith and fair dealing "obligates the
16 | parties to cooperate with each other so that each may obtain the full benefit of
17 | performance." <u>Badgett v. Sec. State Bank</u>, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).
18 | However, the duty of good faith does not extend to obligate a party to accept a material
19 | change in the terms of its contract. <u>Id.</u>  Nor does it "inject substantive terms into the
20 | parties' contract." <u>Id.</u>  "Rather, it requires only that the parties perform in good faith the
21 | obligations imposed by their agreement." <u>Id.</u>  The duty of good faith and fair dealing
22 | thus arises only in connection with terms on which the parties agreed. <u>Rekhter v. Wash.</u>
23 |

1   Dep't of Soc. & Health Servs., 180 Wn.2d 102, 113, 323 P.3d 1036 (2014); see Johnson

2   v. Yousoofian, 84 Wn. App. 755, 762, 930 P.2d 921 (1996) ("The implied duty of good

3   faith is derivative, in that it applies to the performance of specific contract obligations. If

4   there is no contractual duty, there is nothing that must be performed in good faith."

5   (citations omitted)). "Good faith *limits* the authority of a party retaining discretion to

6   interpret contract terms; it does not provide a blank check for that party to define terms

7   however it chooses." Scribner v. Worldcom, Inc., 249 F.3d 902, 910 (9th Cir. 2001)

8   (applying Washington law).

9          The duty of good faith and fair dealing varies with the context in which it arises.

10  Microsoft Corp. v. Motorola, Inc., 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013). "It

11  may violate the duty of good faith and fair dealing to, for example, (1) evade the spirit of

12  a bargain; (2) willfully render imperfect performance; (3) interfere with or fail to

13  cooperate in the other party's performance; (4) abuse discretion granted under the

14  contract; or (5) perform the contract without diligence." Id. (citing RESTATEMENT

15  (SECOND) OF CONTRACTS § 205 cmt. d). "This list is in no way exhaustive, and indeed it

16  would be nearly impossible to create a complete catalogue of conduct that violates the

17  duty of good faith and fair dealing." Id.

18         Plaintiffs' attempt to impose on Expedia an obligation to investigate the claims

19  that purportedly led to the delisting would impermissibly inject substantive terms into the

20  parties' contract. See Badgett, 116 Wn.2d at 569. Plaintiffs' arguments factually

21  distinguishing Haywood v. Amazon.com, Inc., 2023 WL 4585362 (W.D. Wash. July 18,

22  2023) miss the mark. See Resp. at 4 (docket no. 32). The principle underlying the

23

ORDER - 10

Haywood Court's ruling on the plaintiff's breach of contract and breach of implied duty of good faith and fair dealing applies with equal force in this matter: "[T]he implied duty claim cannot create new contractual obligations; it requires the parties to adhere to the contracts they create."  Haywood, Inc., 2023 WL 4585362, at *4–5.  The parties' contract does not obligate Expedia to conduct an investigation.  The contract's purpose is to "list and promote the hotel on its platform in exchange for commissions."  2d Am. Compl. at ¶ 10 (docket no. 28).  Only termination of the contract by either party would cease the parties' obligations under the contract, and the "sole discretion" provision is, in effect, a termination clause.  Expedia's invocation of the "sole discretion" provision was permissible and does not constitute a breach of its duty of good faith and fair dealing.

Accordingly, Expedia's motion to dismiss Plaintiffs' breach of contract claim and implied covenant of good faith and fair dealing claim is GRANTED.[4]  Count I of the Second Amended Complaint is DISMISSED without prejudice.

**C.    Count II – Violation of the Washington Consumer Protection Act**

Under Washington's CPA, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.  RCW 19.86.020.  To establish a CPA claim, a plaintiff must prove five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public

---

[4] The Court also concludes that Plaintiffs' contention that the "limitation of liability provision," see ETP Contract, Ex. A to Vasquez Affidavit (docket no. 14-1 at 11), is unenforceable "because Expedia acted willfully, in bad faith, or with gross negligence," Resp. at 6 (docket no. 32), is not supported by sufficient allegations to state a plausible basis for relief.

ORDER - 11

1  interest, and (4) the plaintiff sustained damage to business or property that was (5) caused
2  by the unfair or deceptive act or practice." Keodalah v. Allstate Ins. Co., 194 Wn.2d 339,
3  349–50, 449 P.3d 1040 (2019).  All five elements must be established for a CPA claim to
4  be successful. Id. at 350.  Defendants argue that Plaintiffs fail to establish the first, third,
5  and fifth elements.  Mot. at 8–10 (docket no. 31).

6        1.     **<u>Element One: Unfair or deceptive act or practice</u>**

7      Plaintiffs claim that "Expedia's arbitrary delisting constitutes an unfair and
8  deceptive act in trade or commerce under RCW 19.86.020." 2d Am. Compl. at ¶ 41
9  (docket no. 28).  As to deception specifically, Plaintiffs argue that "[b]y delisting the
10 Grand Gateway Hotel, consumers were misled to believe it was an uninhabitable option."
11 Resp. at 8 (docket no. 32).

12     Whether a particular act or practice is "unfair or deceptive" is a question of law.
13 Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 47, 204 P.3d 885 (2009).  "A practice
14 is unfair if it 'causes or is likely to cause substantial injury to consumers which is not
15 reasonably avoidable by consumers themselves and is not outweighed by countervailing
16 benefits [to consumers or to competition].'" Shields v. Fred Meyer Stores Inc., 741 F.
17 Supp. 3d 915, 930–31 (W.D. Wash. 2024) (quoting Alpert v. Nationstar Mortg. LLC,
18 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019)).  To show that an act or practice
19 is "deceptive," a plaintiff need only show that the act or practice "had the capacity to
20 deceive a substantial portion of the public." Panag, 166 Wn.2d at 47.  "Deception exists
21 'if there is a representation, omission or practice that is likely to mislead' a reasonable
22
23

ORDER - 12

consumer." Id. (quoting Sw. Sunsites, Inc. v. Fed. Trade Comm'n, 785 F.2d 1431, 1435 (9th Cir. 1986) (emphasis omitted)).

The Court concludes that Plaintiffs failed to plead sufficient facts showing that Expedia's conduct was unfair or deceptive. Plaintiffs admit that they have "no evidence to support" the presumption that consumers were misled to believe Grand Gateway Hotel was uninhabitable, but they insist it is "one reasonably inferred." Resp. at 8 (docket no. 32). While Expedia is "one of the largest online travel platforms in the world," nothing in the parties' agreement prohibited Plaintiffs from contracting with other online travel platforms to advertise the availability of Grand Gateway Hotel's rooms. 2d Am. Compl. at ¶ 42 (docket no. 38). Plaintiffs do not allege that they advertised Grand Gateway Hotel's rooms on Expedia only or otherwise explain why alternatives do not demonstrate consumers could reasonably avoid substantial harm by coming across Grand Gateway Hotel elsewhere on the Internet while making travel plans. A reasonable consumer could conclude that they are unable to book a room through Expedia because of its delisting, *not* that the Hotel has somehow become uninhabitable.

Plaintiffs have not shown that delisting Grand Gateway Hotel in a fashion specifically permitted in the parties' agreement would, in the absence of allegations of fraud or a finding that the relevant provision is unconscionable, constitute an unfair or deceptive act or practice.

Because the parties have also briefed issues related to the public interest impact and causation elements of the CPA, the Court addresses these issues to guide the parties in the event that a third amended complaint is filed.

ORDER - 13

2.     **Element Three: Public interest impact**

Plaintiffs set out several ways in which Expedia's conduct allegedly affected the public interest. See 2d Am. Compl. at ¶ 42 (docket no. 28). Expedia contends that Plaintiffs' CPA claim "effectively describes a private dispute over a contract," which is not actionable. See Mot. at 9 (docket no. 31).

Whether the public has an interest in any given action is to be determined by the trier of fact. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790, 719 P.2d 531 (1986). "Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Id. The "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion" is what "changes a factual pattern from a private dispute to one that affects the public interest." Id. The Hangman Court outlined the following factors that indicate public interest in this context: (1) Were the alleged acts committed in the course of defendant's business; (2) Did defendant advertise to the public in general; (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others; and (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790–91. None of these factors is dispositive, and it is not necessary that all be present. Id. at 791.

After reviewing the parties' arguments on this element, the Court concludes that the parties have not adequately briefed the public interest impact element or Expedia's argument that the parties' dispute is a private one. The Court therefore declines to reach the merits of this issue. See Maldonado v. Morales, 556 F.3d 1037, 1048 n.4 (9th Cir.

ORDER - 14

2009) ("Arguments made in passing and inadequately briefed are waived."); Delashaw v. Seattle Times Co., 2018 WL 4027078, at *14 (W.D. Wash. Aug. 23, 2018) (declining to address a party's cursory argument because the party failed to provide enough detail to allow the court to fully evaluate it).

### 3. **Element Five: Causation**

Plaintiffs state that Expedia's conduct "caused direct injury to Plaintiffs' business and property, including lost revenue, lost partnerships, goodwill, and reputational harm." 2d Am. Compl. at ¶ 43 (docket no. 28). Expedia argues that Plaintiffs cannot show causation because their alleged damages are inconsistent with their public interest allegations. Mot. at 10 (docket no. 31).

Any person injured in his or her business or property by a violation of RCW 19.86.020 may bring a private action. RCW 19.86.090. "A causal link is required between the unfair or deceptive acts and the injury suffered by the plaintiff." Hangman, 105 Wn.2d at 793.

The Court concludes that Plaintiffs pleaded sufficient facts to satisfy the causation element. Plaintiffs claim Expedia's actions caused injury in the form of lost revenue, lost partnerships, good will, and reputational harm. 2d Am. Compl. at ¶¶ 41, 43 (docket no. 28). This allegation is enough under Hangman. Expedia cites no authority that would support injecting any alleged public interest impact into the analysis of the causation element.

1    As Plaintiffs failed to satisfy the first element of their Washington CPA claim, Expedia's Motion to Dismiss on this claim is GRANTED.  Count II of the Second Amended Complaint is DISMISSED without prejudice.

**D.    Leave to Amend**

Expedia moves to dismiss Plaintiffs' Second Amended Complaint with prejudice, and Plaintiffs have not moved for leave to amend their operative pleading.

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires."  As the language of the rule suggests, the standard for leave to amend is "very liberal."  AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006).  The Court must be guided by "the underlying purpose of Rule 15," which is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities."  Lopez, 203 F.3d at 1127.  Leave to amend should be granted unless "strong evidence" exists of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty., 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original, quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Although Plaintiffs have amended their complaint twice, the Court has not previously issued an Order concerning the adequacy of Plaintiffs' pleading.  Plaintiffs have therefore not "repeatedly" failed to cure the deficiencies in their complaint.  Expedia

ORDER - 16

does not articulate any prejudice or provide evidence of undue delay, bad faith, or dilatory motive. Additionally, the Court has not yet issued a scheduling order.

Plaintiffs may file a third amended complaint.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant Expedia's Motion to Dismiss is GRANTED as follows. Plaintiffs' Second Amended Complaint, docket no. 28, is DISMISSED without prejudice.

(2) Any third amended complaint shall be filed by February 13, 2026.

(3) The Court EXTENDS the parties' deadline to file their joint status report, see Docket Text Entry (Nov. 19, 2025), to March 13, 2026.

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 13th day of January, 2026.

Thomas S. Zilly
United States District Judge