UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RETSEL CORPORATION, d/b/a Grand Gateway Hotel and d/b/a Cheers Sports Lounge and Casino; CONNIE UHRE; and NICHOLAS UHRE,<br><br>Plaintiffs,<br><br>v.<br><br>EXPEDIA, INC. d/b/a Expedia.com,<br><br>Defendant. | C25-1033 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant Expedia, Inc.'s Motion to Dismiss the Third Amended Complaint, docket no. 37. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

Plaintiffs Retsel Corporation, Connie Uhre, and Nicholas Uhre (collectively, "Plaintiffs") operate the Grand Gateway Hotel and Cheers Sports Lounge and Casino. 3d Am. Compl. at ¶¶ 5–7 (docket no. 36). These entities are long-standing establishments that serve tourists and the local community in Rapid City, South Dakota. Id. at ¶ 9. Plaintiffs entered into a contract with Expedia, under which Expedia agreed to list and promote the Grand Gateway Hotel on its platform in exchange for commissions on reservations. Id. at ¶ 10. The parties' contract contains the following provisions:

"Expedia may, at any time and in its sole discretion, refuse to offer, display, or list for booking any of Your rooms made available by You through the Expedia System"; and "[t]he Contract will remain in effect, unless terminated by either You or Expedia by giving at least fourteen (14) days prior written notice." Expedia Traveler Preference Contract, Ex. A to Vasquez Affidavit (docket no. 14-1 at 1, 11). The contract also contains a "Health and Safety" provision under which Expedia may request health and safety information from the Grand Gateway Hotel, conduct inspections, and recommend changes. Id. at 8. If the Grand Gateway Hotel fails to comply with Expedia's recommendations, "Expedia may terminate this Contract immediately upon written notice." Id. at 9.

Prior to 2022, Expedia listings accounted for the majority of Plaintiffs' bookings and revenue. 3d Am. Compl. at ⁋ 11 (docket no. 36). Together with Booking.com, Expedia controls approximately 90% of U.S. online travel agency bookings. Id.

Starting in 2020, members and affiliates of "activist group NDN Collective" launched a campaign to portray Plaintiffs and their business as racist through the use of false social media posts. Id. at ⁋ 12. These posts went viral, which resulted in harassment, threatening phone calls, reputational harm, and coordinated pressure on Plaintiffs' business partners. Id. Between mid 2020 and April 2021, individuals associated with NDN Collective repeatedly booked rooms at the Grand Gateway Hotel and caused disturbances and property damage, apparently to provoke confrontations. Id. On March 19, 2022, a fatal shooting occurred inside the Grand Gateway Hotel; Plaintiffs were not involved. Id. at ⁋ 13.

On March 20, 2022, Plaintiff Connie Uhre made a personal Facebook post "that activists seized upon." Id. "On March 21, 2022, Plaintiffs issued a public apology." Id. In response, activists escalated their campaign by staging and filming confrontations at the Grand Gateway Hotel, trespassing, damaging property, hanging defamatory banners over Plaintiffs' signage, and encouraging boycotts. Id. at ⁋ 14. NDN Collective members also called Defendant Expedia and other third-party booking platforms to demand delisting of the Grand Gateway Hotel. Id. NDN Collective's "campaign against Plaintiffs has spanned from 2020 through the present—over six years—with no indication of abating." Id.

On March 26, 2022, Expedia deactivated the Grand Gateway Hotel's listing. Id. at ⁋ 15. Plaintiffs allege that on April 14, 2022, Plaintiffs' revenue manager contacted Expedia to inquire about the inactive status. Id. Expedia responded that it "'was made aware of the unfortunate incident at this property' and requested information." Id. Plaintiffs subsequently provided a detailed response addressing each inquiry. Id. On April 19, 2022, Expedia informed Plaintiffs by email that "[o]ur Health and Safety team has approved bringing the property back on sale. The request has been sent to our operations team so the property should be back on Expedia in the next 24–48 hours." Id.; Ex. A to 3d Am. Compl. (docket no. 36-1 at 7). The listing was subsequently reinstated. 3d Am. Compl. at ⁋ 15 (docket no. 36).

In November 2023, Expedia allegedly invoked a contractual provision to suspend the Grand Gateway Hotel listing and initiate a Health and Safety investigation. Id. at ⁋ 16. Expedia's suspension notification stated the property "was suspended 'pending a response' and requested information regarding Plaintiffs' training procedures, anti-

discrimination policies, code of conduct, incident records, and any reports of racial abuse–the types of inquiries contemplated by the Contract's Health and Safety provision." Id. Plaintiffs fully cooperated with Expedia's investigation and at no point during or after this investigation did Expedia "invoke the contractual remedy of termination with written notice available under that provision for non-compliance." Id. at ⁋ 17.

On February 28, 2024, Expedia informed Plaintiffs by email that, after a thorough investigative review of the incidents and allegations provided, it found Plaintiffs' responses to Expedia's inquiries and Plaintiffs' plans to address any concerns to be satisfactory. Id. at ⁋ 18; Ex. B to 3d Am. Compl. (docket no. 36 at 2). Expedia then considered the investigation resolved and noted that, because the property was suspended pending investigation, Expedia was "now in the process of reinstating it to our live sites," and asked Plaintiffs to allow for 24–48 hours for that to occur. Id. On March 6, 2024, Plaintiffs followed up with Expedia because the Grand Gateway Hotel had still not been reinstated. Ex. B to 3d Am. Compl. (docket no. 36-2 at 7). An Expedia employee responded the same day and allegedly stated that "I am working with our leadership to determine the next course of action as we have run into some difficulties re-instating the property" and that someone will follow up once they had a better understanding on the matter. Id. Expedia failed to follow through with these representations, ceased communication entirely, and the listing was never reinstated. 3d Am. Compl. at ⁋ 20 (docket no. 36). In the spring of 2025, Expedia's business development team contacted Plaintiffs' revenue manager to "republish" the Grand Gateway Hotel and sent a new contract to Plaintiff Chad Uhre for signing and to start the onboarding process. Id. at

⁋ 21. Plaintiffs' revenue manager followed up with Expedia for weeks thereafter, but the property never reappeared on Expedia's platform. Id. Plaintiffs allege that while Expedia used the same "'24–48 hours' reinstatement language" on three separate occasions, Expedia honored its commitment only once. Id. at ⁋ 23. Plaintiffs claim this "repeated pattern of making and breaking reinstatement promises demonstrates willful bad faith, not inadvertent delay." Id.

Plaintiffs assert two claims against Expedia: (1) breach of contract and implied covenant of good faith and fair dealing,[1] and (2) violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86. See id. at ⁋⁋ 32–50. Plaintiffs contend that Expedia's removal of the Grand Gateway Hotel from its websites caused an immediate and sustained collapse in Plaintiffs' business, with an "80% drop in bookings beginning in March 2022." Id. at ⁋ 27. Plaintiffs also contend that lost revenue exceeded $250,000 in 2023 alone and the financial impact has continued through 2026 due to Expedia's repeated failures to reinstate the property on its websites. Id. Plaintiffs state that they have lost lucrative partnerships and long-term group bookings, including cancellations by sports teams, tour operators, and conferences who relied on Expedia's platform for reservations, as well as a long-term commercial tenant. Id. at ⁋ 28. Plaintiffs allege that Expedia's actions "inflicted severe reputational harm and loss of goodwill, as Plaintiffs were portrayed in media and activist campaigns as 'delisted' or

---

[1] The parties again interpret Count I as containing one claim: for breach of the implied covenant of good faith and fair dealing. Mot. at 4 (docket no. 37); Resp. at 3–7 (docket no. 40); see Ord. at 4 n.1 (docket no. 35). The Court follows the parties' lead and analyzes that claim for breach of implied covenant of good faith and fair dealing in Count I. See Haywood v. Amazon.com, Inc., 2023 WL 4585362, at *2 (W.D. Wash. July 18, 2023).

'blacklisted' by a dominant travel platform, further discouraging future business." Id. at ⁋ 29. Plaintiffs have since incurred "significant mitigation costs," including emergency advertising and third-party marketing, in efforts to offset the loss of Expedia listings. Id. at ⁋ 30. The cumulative effect of Expedia's conduct has caused "near-total destruction of Plaintiffs' business" and the Grand Gateway Hotel "now faces foreclosure proceedings." Id. at ⁋ 31.

The Court previously granted Expedia's motion to dismiss Plaintiffs' Second Amended Complaint with leave for Plaintiffs to file a third amended complaint. Ord. at 17 (docket no. 35). Plaintiffs did so, and Expedia has again moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' Third Amended Complaint. See Mot. (docket no. 31).

**Discussion**

**A. Legal Standard**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. Id. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts to state a cognizable legal claim. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). On a Rule 12(b)(6) motion, the question for the Court is whether the facts in

the operative pleading sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570. If the Court dismisses the complaint in part or in toto, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

### B. Count I – Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Expedia breached the implied covenant of good faith and fair dealing by voluntarily exercising its discretion pursuant to the Health and Safety section of the Contract, conducting an investigation, resolving it in Plaintiffs' favor, and making an express written commitment to reinstate the Grand Gateway Hotel within 24–48 hours. 3d Am. Compl. at ¶¶ 36–37 (docket no. 36). Expedia offers three reasons why this claim must be dismissed as a matter of law: (1) a contractual provision provides Expedia the "sole discretion" to refuse to offer, display, or list for booking any of the Grand Gateway Hotel's rooms made available through the "Expedia System"; (2) no binding reinstatement commitment exists; and (3) Plaintiffs' selective enforcement allegations do not establish bad faith. Mot. at 5–7 (docket no. 37).

Under Washington law, the duty of good faith and fair dealing "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). The duty of good faith does not, however, extend to obligate a party to accept a material change in the terms of its contract. Id. Nor does it "inject substantive terms into the parties' contract." Id. "Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement." Id. The duty of good faith and fair dealing thus arises only in connection with terms on which the parties agreed. Rekhter v. Wash.

Dep't of Soc. & Health Servs., 180 Wn.2d 102, 113, 323 P.3d 1036 (2014); see Johnson v. Yousoofian, 84 Wn. App. 755, 762, 930 P.2d 921 (1996) ("The implied duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith." (citations omitted)). "Good faith *limits* the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." Scribner v. Worldcom, Inc., 249 F.3d 902, 910 (9th Cir. 2001) (applying Washington law).

As the basis for their first claim, Plaintiffs focus on Expedia's decision to conduct an investigation pursuant to the "Health and Safety" provision of the parties' contract and, after resolving the investigation in Plaintiffs' favor, promising to reinstate the Grand Gateway Hotel on their website. The Health and Safety provision did not empower Expedia to remove the listing pending the results of its investigation; Expedia derived that authority from the contract's "sole discretion" provision. The Court previously held that the "sole discretion" provision is valid and enforceable. See Ord. at 8–9 (docket no. 35). The "Health and Safety" provision does not explain any procedure by which Expedia may or may not delist the Grand Gateway Hotel pending its health and safety review of that property. Instead, it merely empowers Expedia to terminate the contract should Plaintiffs fail to comply with their obligations under that provision. No term in the parties' contract outlines a mechanism by which Expedia must reinstate the Grand Gateway Hotel. Unlike in Rekhter, the "sole discretion" provision did not provide Expedia discretionary authority "to determine a future contract term." 180 Wn.2d at 112.

That provision instead affords Expedia the power to effectively terminate the contract. See Ord. at 11 (docket no. 35).

Accordingly, Expedia's motion to dismiss Plaintiffs' breach of contract claim and implied covenant of good faith and fair dealing claim is GRANTED. Count I of the Third Amended Complaint is DISMISSED.

**C. Count II – Violation of the Washington CPA**

Under the Washington CPA, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. RCW 19.86.020. To establish a CPA claim, a plaintiff must prove five elements: "(1) an unfair or deceptive act or practice that (2) affects trade or commerce and (3) impacts the public interest, and (4) the plaintiff sustained damage to business or property that was (5) caused by the unfair or deceptive act or practice." Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 349–50, 449 P.3d 1040 (2019). All five elements must be established for a CPA claim to be successful. Id. at 350. Expedia argues that Plaintiffs fail to establish the first and third elements. Mot. at 7–9 (docket no. 37). The Court agrees.

**1. Element One: Unfair or deceptive act or practice**

Plaintiffs claim that Expedia's conduct of making reinstatement commitments after concluding its investigations into the Grand Gateway Hotel constitutes an unfair and deceptive act or practice. See 3d Am. Compl. at ¶¶ 42–44 (docket no. 36).

Whether a particular act or practice is "unfair or deceptive" is a question of law. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 47, 204 P.3d 885 (2009). "A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing

benefits [to consumers or to competition].'" Shields v. Fred Meyer Stores Inc., 741 F. Supp. 3d 915, 930–31 (W.D. Wash. 2024) (quoting Alpert v. Nationstar Mortg. LLC, 2019 WL 1200541, at *6 (W.D. Wash. Mar. 14, 2019)). To show that an act or practice is "deceptive," a plaintiff need only show that the act or practice "had the capacity to deceive a substantial portion of the public." Panag, 166 Wn.2d at 47. "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." Id. (quoting Sw. Sunsites, Inc. v. FTC, 785 F.2d 1431, 1435 (9th Cir. 1986) (emphasis omitted)).

The Court concludes that Plaintiffs failed to plead sufficient facts showing that Expedia's conduct was unfair or deceptive. As to unfairness, Plaintiffs again improperly focus their allegations on how *they* rather than *consumers* could not reasonably avoid injury. See 3d Am. Compl. at ⁋⁋ 42–43 (docket no. 36). As to deception, Plaintiffs fail to explain how allegedly deceiving hotel partners is equivalent to deceiving consumers under the Washington CPA.[2] Plaintiffs broadly claim that "[c]ourts routinely recognize that deceptive conduct by dominant marketplace platforms—particularly those controlling consumer access to goods and services—implicates the public interest because it distorts both consumer perception and competitive conditions, even where the immediate dispute arises from a business relationship." Resp. at 10 (docket no. 40). Plaintiffs cite no specific authority in support of this proposition. See id. (citing generally

---

[2] Plaintiffs argue that Expedia's practices that Plaintiffs challenge have "the capacity to mislead both hotel partners and consumers about the reliability of Expedia's processes and the availability of legitimate lodging options." Resp. at 9 (docket no. 40). No allegation in the Third Amended Complaint supports this argument as it relates to consumers specifically. The Court has previously rejected this argument. See Ord. at 13 (docket no. 35).

to Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 790–91, 719 P.2d 531 (1986)). Plaintiffs have not shown that delisting the Grand Gateway Hotel in a fashion specifically permitted in the parties' agreement would constitute an unfair or deceptive act or practice.

Plaintiffs have failed to plead facts sufficient to support the first element of their Washington CPA claim.

**2. Element Three: Public interest impact**

Plaintiffs offer several ways in which Expedia's conduct allegedly affected the public interest. See 3d Am. Compl. at ¶¶ 46–47 (docket no. 36). Expedia contends that Plaintiffs' CPA claim concerns a private contract dispute that is not actionable. See Mot. at 13 (docket no. 37). The Court previously declined to address the parties' arguments due to insufficient briefing on this issue. See Ord. at 14–15 (docket no. 35).

"Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." Hangman, 105 Wn.2d at 790. The "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion" is what "changes a factual pattern from a private dispute to one that affects the public interest." Id. The Hangman Court outlined the following factors that indicate public interest in this context: (1) Were the alleged acts committed in the course of defendant's business; (2) Did defendant advertise to the public in general; (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others; and (4) Did plaintiff and defendant occupy unequal bargaining positions? Id. at 790–91. None of these factors are dispositive, and it is not necessary that all be present. Id. at 791.

The parties disagree as to whether there is any likelihood that additional plaintiffs have been or will be "*injured* in exactly the same fashion" as Plaintiffs have alleged here. Hangman, 105 Wn.2d at 790 (emphasis added); see Resp. at 10–11 (docket no. 40); Reply at 5–6 (docket no. 41). Contrary to Expedia's reading of Hangman, Plaintiffs need not allege that the same triggering events that led to Expedia's health and safety investigation into the Grand Gateway Hotel have any likelihood of being replicated by other hotels who have partnered with Expedia; the correct focus is whether additional plaintiffs have been or will be *injured* in exactly the same fashion. Plaintiffs' alleged injury stems from Expedia's refusal to reinstate the Grand Gateway Hotel after concluding its investigation and informing Plaintiffs that it would do so. Given Expedia's ability to delist any property for any or no reason through the "sole discretion" provision of its contract, Plaintiffs have sufficiently alleged that there exists a "likelihood" of additional plaintiffs being injured in the same or similar fashion. See 3d Am. Compl. at ¶¶ 24, 47 (docket no. 36).

Nevertheless, the Court concludes that Expedia's representations about reinstating the Grand Gateway Hotel are private in nature given the unique context in which the statements were made between parties subject to a private contract. While the representation was made in the course of Expedia's business, it was limited to Expedia's investigation into Plaintiffs' health and safety practices pursuant to terms of the parties' contract. See Ride the Ducks Seattle LLC v. Ride the Ducks Int'l LLC, 2023 WL 1099641, at *4 (W.D. Wash. Jan. 30, 2023). This factor favors Expedia. Second, there is no evidence that Expedia advertised to the public any representations about reinstating the Grand Gateway Hotel on its platform; the emails attached to the Third Amended

Complaint suggest that these representations were made only to Plaintiffs and their employees. See Ex. B to 3d Am. Compl. (docket no. 36-2 at 2–8). This factor also favors Expedia. Third, while Plaintiffs have alleged that "Expedia solicited Plaintiffs to list on its platform, just as it solicits thousands of other hotels nationwide," Expedia's representations about reinstatements were limited to Plaintiffs and were not part of solicitations or representations to others. 3d Am. Compl. at ⁋ 46 (docket no. 36). This factor likewise favors Expedia. Fourth, there are sufficient allegations to suggest that Expedia maintained an unequal and favorable bargaining position over Plaintiffs. See id. This factor favors Plaintiffs. On balance, the Court concludes that Plaintiffs have not alleged sufficient allegations to satisfy the public interest element of their CPA claim and that Expedia's representations of reinstatement after concluding its investigation in Plaintiffs' favor was anything more than a private communication leading to a private dispute between the parties.

Accordingly, Plaintiffs have failed to offer sufficient allegations to support the first and third elements of their Washington CPA claim, which therefore fails as a matter of law. Count II of the Third Amended Complaint is DISMISSED.

**D. Leave to Amend**

Plaintiffs request leave to amend their operative pleading because Expedia has demonstrated neither prejudice nor futility. Resp. at 12 (docket no. 40). Expedia opposes, arguing that any future amendment would be futile and Plaintiffs' Third Amended complaint should be dismissed with prejudice. See Reply at 6 (docket no. 41).

Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for

leave to amend is "very liberal." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006). The Court must be guided by "the underlying purpose of Rule 15," which is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." Lopez, 203 F.3d at 1127. Leave to amend should be granted unless "strong evidence" exists of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original, quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Futility alone may warrant denying leave to amend "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Barahona v. Union Pac. R.R. Co., 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting Sweaney v. Ada County, 119 F.3d 1385, 1393 (9th Cir. 1997)).

The Court concludes that strong evidence exists of futility of amendment. Plaintiffs have now amended their complaint three times, with the Court addressing the adequacy of Plaintiffs' pleading once before. See Ord. at 16–17 (docket no. 35). Plaintiffs' theories as to their first claim have been consistently and fatally hamstrung by the "sole discretion" provision of the parties' contract. Plaintiffs' second claim cannot proceed because private disputes are not actionable under the Washington CPA. If the Court were to permit Plaintiffs to file a fourth amended complaint, no allegations Plaintiffs assert could change the validity and enforceability of the "sole discretion" provision, challenge Expedia's ability to invoke its authority under that provision, or describe anything more than a dispute between two parties regarding a private contract.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant Expedia's Motion to Dismiss the Third Amended Complaint, docket no. 37, with prejudice is GRANTED.

(2) The Clerk is directed to enter judgment consistent with this Order, to send a copy of this Order and the Judgment to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 28th day of July, 2026.

Thomas S. Zilly
United States District Judge